# Supreme Court of the Navajo Nation

**Jack Riggs, Appellant,**
**v.**
**Vivian Riggs, Appellee.**
**Decided March 5, 1991**

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Carol K. Retasket, Esq., Window Rock, Navajo Nation (Arizona), for the Appellant; and Thomas J. Holgate, Esq., DNA-People's Legal Services, Inc., Window Rock, Navajo Nation (Arizona), for the Appellee.

Opinion delivered by BLUEHOUSE, Associate Justice.

This appeal is from a decree of divorce rendered by the Window Rock Family Court on June 12, 1990. Jack Riggs, the appellant, raises eleven issues on appeal, primarily attacking the sufficiency of the evidence to support the court's allocation of property and fixing of sums of alimony and child support. For the purpose of resolution by the Court, the issues are restated as follows:

    1.  Whether there is sufficient evidence of a marriage between the parties?

    2.  Given the record, the appellant's opportunity to present competent evidence, and the evidence actually presented by the appellant, did the Family Court properly allocate the property of the parties and establish reasonable sums of alimony and child support?

## I. FACTS

Jack and Vivian Riggs were married some time in September of 1951. On March 24, 1974, they both appeared before the Window Rock District Court, and based upon their testimony regarding the marriage, the court issued a decree validating it pursuant to 9 N.T.C. §§ 61 and 62.

On February 7, 1989, Vivian Riggs filed her petition for dissolution of the marriage. She recited the parties' community property and debts in detail. Mr. Riggs' answer to the petition generally admitted and denied the allegations of the petition, but specially stated, that "he ha[d] insufficient information as to how the validation of marriage was entered by the Court without his knowledge." The answer provided no information regarding Mr. Riggs' claims to property, his debts, or his financial status.

On May 22, 1989, the Family Court conducted a pretrial conference, and the pretrial report (which was signed by the lawyers for the parties) shows that the fact of marriage was not in dispute. It also shows that Mr. Riggs' pay stubs would be offered in evidence at trial. On March 20, 1990, the court entered an additional pretrial order, directing the parties to gather all records regarding community property and debts, and to compile an inventory with proposed plans of distribution and assignment of property. That order granted interim spousal and child support in the sum of $500.00 per month. The case went to trial on June 7, 1990.

The first major issue the court addressed was whether there was a marriage. The court noted the existence of a certified copy of an order entered in *In the Matter of the Validation of Marriage of: Jack Riggs and Vivian Riggs*, No. WR-VM-105-74 (Window Rock Dist. Ct., 1974), and took judicial notice of the fact of marriage.

As the case progressed, there was a great deal of dispute over Mr. Riggs' exact amount of income. Mrs. Riggs called him as a witness, and after having him authenticate it, offered an Atchison, Topeka and Santa Fe Railway Company pay statement for the "last half" of November, 1986. The parties argued over whether the amount of pay reflected in the statement presented a true picture of Mr. Riggs' current income. Mr. Riggs was vague and evasive about the amount of his current earnings. While he said the pay level as of November, 1986 was not representative, he did not give a precise figure. He told the court he earned various amounts, and at one point he admitted the November, 1986 pay level was correct. The statement showed gross wages of $1,303.39 for 59 hours of regular time, 16 hours of holiday, and 26.5 hours of overtime. It also showed deductions of $142.50 for insurance premiums, credit union payments, and union dues. The transcript shows that the court accepted the statement with caution, and as the trial progressed, the court repeatedly asked the parties to present evidence of Mr. Riggs' exact earnings. Mr. Riggs controlled that information, but did not enlighten the court or the parties about his income, debts, or expenses.

Finally, after noting that the parties had not complied with the second pretrial order, the court declared a recess of the trial to permit the parties to negotiate and develop their claims for the property and debts for rational presentation. Following the recess, the parties stipulated as to the extent of community and separate property and the debts and how they should be divided, leaving only the issues of child support and alimony to be decided as contested matters. The parties also stipulated that they have a valid marriage and that they desired a divorce.

The transcript shows a great deal of fumbling around with income and expense figures, matters which could have been clearly presented by demonstrative exhibits based upon income and expense records. At the end, the court was left with information and figures on property, income, and expenses developed through testimony.

The court's findings of fact show the dilemma created by the parties by not

presenting the facts in a clear manner. The court was left to determine the market value of the community property on the basis of an estimate, "no such valuation being provided by the parties." Alimony was determined by the court on the basis of its estimate of the potential income Mrs. Riggs could earn by rug weaving, and an estimation of her expenses based upon testimony. The finding on Mr. Riggs' income was based upon the court's determination of what evidence was reliable. The finding noted that, "In [the] absence of a showing of present day income, deductions and other benefits, this Court can only assume that Respondent's income is at least that shown on the 1986 payroll stub if not more. In [the] absence of a showing of personal expenses of the Respondent, this Court cannot credit the Respondent with any amount for such expenses, assuming there are any." Window Rock Family Court's Final Decision at 5. While Mr. Riggs testified about debts owing to a credit union and the Internal Revenue Service, he produced no documents or records proving them. He testified that he had simply left his papers in California, and did not bring them. That oversight left the credibility of his testimony to the court, and obviously the court concluded that it was not credible. Given the vagueness and conflicting statements in the record, credibility was a problem for the court.

A full review of the trial transcript shows that the court was faced with a disorganized mass of vague evidence to sort out for a final decree, and that Mr. Riggs failed to take advantage of his opportunity to fully develop the facts in his favor. In sum, the court was left to do what it could with the limited information offered by Mr. Riggs.

## II. EVIDENCE OF THE MARRIAGE

On appeal, Mr. Riggs claims that the court improperly took judicial notice of the adjudicative fact of the validation of marriage order, and that it denied him due process of law by limiting his ability to attack the order for fraud. That issue is not before the Court because Mr. Riggs waived it in the answer. Even if Mr. Riggs had not waived it, the record shows that Mr. Riggs stipulated that the marriage was valid and he wanted a divorce. Trial Transcript at 44.

Fraud in obtaining a court judgment, decree, or order is an affirmative defense, NRCP 6 (1978), and it must be pleaded as such in the answer. If fraud is not pleaded at the time the answer is filed, it can only be asserted thereafter by leave of court upon written motion to amend the pleading. While rules of procedure may be given liberal construction to do substantial justice, Mr. Riggs' statement in his answer that he "has insufficient information as to how the validation of marriage was entered by the Court without his knowledge" is not a fair statement of an affirmative defense. In addition, there are special requirements for raising the question of fraud, which is what Mr. Riggs was saying when he stated that the validation decree was entered without his knowledge.

At the time of the first pretrial conference on May 22, 1989, Mr. Riggs

(through his counsel) stipulated that the fact of marriage was not in dispute. While the issue surfaced again at the opening of the trial on June 7, 1990, Mr. Riggs again stipulated to a valid marriage following the recess called by the court for the parties to assemble their cases. It is waived on appeal as well.

The transcript of trial was filed with the Supreme Court on September 28, 1990, and Mr. Riggs' brief was filed on November 15, 1990. Counsel for Mr. Riggs should have thoroughly reviewed the transcript before asserting frivolous-claims of error based upon the marriage issue.

## III. SUFFICIENCY OF EVIDENCE TO SUPPORT THE DECREE

Nine N.T.C. § 404 provides that, "[e]ach divorce decree shall provide for a fair and just settlement of property rights between the parties, and also for the custody and proper care of the minor children." Mr. Riggs raises several claims of error in the reception and interpretation of evidence, going to a fair and just settlement of property rights and provision for the proper care of the remaining minor child of the couple.

There is nothing by way of legal argument to support the conclusion that what the Family Court did was inconsistent with justice or affected Mr. Riggs' substantial rights. Any error was Mr. Riggs' own creation, and the Family Court cannot be faulted for the consequences of Mr. Riggs' own inaction.

There is no issue regarding property division because the parties entered into a stipulation before the court regarding *all* their community and separate property. The parties did not follow the prior court order to be prepared to address property, income, debt and other issues. The parties instead attempted to offer such matters to the court piecemeal, through testimony. When the court instructed the parties to sort those matters out during a recess, they returned to recite an oral list of what there was and who would get what. Given the recitation of such a list in open court, rather than reducing it to writing in advance (as ordered), errors are simple to make. The proper remedy to address clerical errors is to bring those errors to the trial court's attention for correction as soon as possible. Clerical errors are not to be corrected using the appeal process.

Mr. Riggs argues due process to attack the findings of fact of the decree dealing with his income, expenses, and debts. However, if there were any unfairness in the adjudicative process, the fault was his. Mr. Riggs complains about the use of the November, 1986 pay stub in a June, 1990 trial to establish his current income, but that was the only substantial piece of evidence to show actual earnings. Mr. Riggs controlled the best evidence of his earnings as of June, 1990, and because he failed to produce that evidence, without a satisfactory explanation for nonproduction, the court could draw an inference that the evidence would have been unfavorable to him. Also, because Mr. Riggs had it in his power to rebut or explain the evidence or earnings Mrs. Riggs was able to produce, his failure

to do so led to an inference he could not do so. *Navajo Nation v. Descheeny*, 3 Nav. R. 246 (Window Rock Dist. Ct., 1982). There is a credibility issue in whether the trial court should have accepted Mr. Riggs' vague assertions about his earnings, debts, and expenditures, and it is obvious the Family Court did not find Mr. Riggs' testimony very credible. The Family Court was in the best position to listen to and watch Mr. Riggs to decide how credible he was, and this Court will not disturb a credibility finding by a trial court without a strong showing of error.

Counsel should have taken the opportunity to guide the court through arguments or submissions, and Mr. Riggs could have asked for leave of court to prevent any confusion, error, or omission by offering proposed findings or some other documentary statement of his claims. The court did the best it could with what it had before it, and there is no substantial error in what was done.

The question of whether there was error in allowing the minor child's expenses for rodeo activities is a minor one. Nine N.T.C. § 404 requires the Family Court to provide for the "proper care of the minor children." The term "proper care" is a broad one, and it can encompass many kinds of benefits for children, including recreational opportunities. We are not prepared to accept the assertion that rodeo expenses were improper because rodeo is a dangerous sport.

The family courts are in the best position to determine the nature and extent of a child's needs, and the Supreme Court will not find an abuse of discretion in assessing those needs, unless there is clear error in determining the expenses or its amounts in relation to the resources of the parents.

Family courts sit as courts of equity in allocating property and responsibility. The process of dividing property fairly, giving values to each item to assure fairness, and the process of fixing dollar amounts of alimony or child support is a difficult one without a clear picture of the property and finances of the parties. The modern trend is to attempt an equal division of property between couples with approximately equal needs, and to fix support and alimony obligations on the basis of financial need and ability to pay. The best time to develop such information is the pretrial conference, and the family courts should use their inherent powers to regulate the orderly progress of a case to require counsel to prepare that information. The pretrial order is an excellent tool to require the parties to develop a complete picture of assets, income, debts, and expenses, and it should be used to aid the court. Where the court finds unprepared parties, it should consider tools such as continuing the trial, requiring the preparation of summaries, or allowing the submission of proposed findings of fact and conclusions of law.

The Supreme Court grants relief for errors which are not the fault of a party, and this Court will give no relief to a party who created the error in the first place.

Affirmed.